The opinion of the court was delivered by
Horton, C. J.:
This case was before this court at the January term, 3880. (23 Kas. 474.*)
At that time we held that Mrs. Caplice was only entitled to a reasonable compensation for the inconvenience or service in making her signature to the receipt on the back of the insurance policy, and remanded the case. for a new trial. Thereafter the plaintiff in error amended her petition, and declared upon the contract made for services and the agreed price therefor. The trial was had upon such amended petition, to the court without a jury. The following are the findings of fact:
*371 “1. That the contract of employment was made, as alleged in the petition.
“2. That the services were rendered by the plaintiff, as alleged in the petition.
“3. That at the time of the employment, defendants promised to pay for the services, as shown by the written obligation set forth in the petition.
“4. That the money due on the'insurance policy was paid by the insurance company to the defendants, and the sum for the services specified in the written obligation, set forth in the petition, was demanded by the plaintiff from the defendants more than ten days after the payment of the amount due on the policy, and before the commencement of this action.
“ 5. That the contract of. employment, and promise to pay .therefor the amount specified in the. written obligation set forth in the petition, were made by the parties, with full knowledge of all the facts, and without any fraud or misrepresentation-on the part of the plaintiff, but that she demanded from the defendants a promise to pay her $477.73, and refused to sign the receipt to the insurance company until they executed the agreement to pay her that sum, when the value of her work and labor in signing said receipt was only one cent.”
And as a .conclusion of law, the court found that—
“The plaintiff was entitled to recover the sum of one cent and costs up to the time of the offer to confess judgment, and thereupon rendered judgment in favor of plaintiff and against the defendants for the sum of one cent and her costs herein expended up to the 20th day of June, 1881, at the time of said offer to confess judgment was made, taxed at $-, and that said plaintiff pay the costs thereafter incurred by defendants.”
Notwithstanding the very able and. exhaustive argument presented by counsel for plaintiff in error, we think the case occupies very much the same attitude as when presented upon the former hearing; and perceiving no good reason to change our views of the law as heretofore declared, we think the judgment of the court below must be affirmed. We did not hold before, and do not hold now, that mere inadequacy of consideration alone is a sufficient ground for setting aside or refusing to enforce a contract; and we fully agree with counsel, *372 that no case can be found in the authorities where inadequacy of consideration, abstracted from all other considerations, has been deemed sufficient to set aside a contract, or to refuse to enforce it. If our former opinion was liable to this construction, we would be very willing, not only to reconsider, but to reverse that judgment. We stated then, that morally Mrs. Caplice ought to have given her signature without making the extortionate demand she did; that instead of acting justly, she attempted to take advantage, and an unfair one, of the parties who had bought and paid for all her right and interest in the insurance policy. We can do more than reiterate now what we then said, that courts, as a rule, will lay hold of the slightest act of oppression or unfair advantage to set at naught a promise obtained under the circumstances that the agreement sued upon was acquired.
Counsel for plaintiff in error refers to the finding, that such agreement was made by the parties with full knowledge of all the facts, and without any fraud or misrepresentation; and upon this insists that the question of the value of the services of plaintiff was solely a question between the contracting parties. If Mrs. Caplice had not been connected with the sale and transfer of the policy to the makers of the contract sued upon, and the makers thereof had employed her to render services for them in the collection of the claim against the insurance company, and had promised to pay her much or little therefor, we suppose the contract could be enforced, however inadequate the consideration. Under circumstances of that kind, if the demand of Mrs. Caplice for her services had been extravagant, the parties would have had the opportunity to reject her services, and employ some other person who was more reasonable in his or her charges; but in this case, Messrs. Kelley & McHale had no choice other than to make the promise in writing demanded of them by Mrs. C., or fail to obtain the money due them until after long delay and costly litigation. Mrs. Caplice and her husband had sold and transferred the policy to the makers of the contract, and as an inducement to purchase, thé latter parties expected to collect the money *373 due therein at maturity. We may assume, as nothing appears to the contrary, that .in such purchase Mr. and Mrs. Caplice dealt with the buyers upon equal terms; that they received consideration to their full satisfaction for the assignment and delivery of the policy, and, acting in good faith to their assignees, they were interested in having them collect the amount due on the policy from the insurance company. The company was very willing to pay the policy, and thus carry out the agreement of the parties, if Mrs. Caplice, the beneficiary in the policy, would sign the second transfer or receipt. This signature was asked for, we suppose, out of abundant caution on the part of the insurance company to save any further claim by Mrs. Caplice of interest in its proceeds. The refusal of Mrs. Caplice to write her signature blocked the paj'ment of the policy. She did not pretend to have any title or interest in the policy or its proceeds; but when she ascertained the inability of her assignees to collect the money on the policy she had transferred to them, without her release, except by long delay and costly litigation, she conceived the idea of exacting a hard and unconscionable bargain from the very persons whom she ought, in common honesty, to have aided to collect the policy she had transferred. For the mere inconvenience of writing her name, for service worth only one cent, she demanded an agreement in writing for the payment of' nearly $500. As tending to show the conduct of Mrs. Caplice, and the circumstances under which the agreement was signed, we quote from the evidence of Kelley, one of the defendants in error, as follows:
“ I am a partner of McHale; had an equal interest in policy with McHale. When policy was due, the company required us to get plaintiff’s receipt on back of policy for the money. I went to plaintiff and asked her to sign the receipt. She said she would not, unless we paid her $477.73, or executed agreement to pay it; that she eould heat us out of all of it, hut would not, if we would give her the-agreement for $4-77.78. She then and there admitted that she had assigned the policy over to us, and had been fully paid for it. She made no claim to any interest in the policy. The signing of the receipt was the only consideration for the agreement sued on. The re *374 ceipt was signed May 29, 1878. The agreement sued on was signed same day.”
The statements of Mrs. Caplice to Kelley, and the terms of the agreement, satisfy us that there must have been that pressure upon the signers at its execution, which in our view amounts to oppression and extortion. The agreement was so hard and unconscionable that we do not think it ought to be enforced.
Under the circumstances, Mrs. Caplice ought not to recover, if anything, at most only what was, fairly due her for the inconvenience or service for writing her signature.
The judgment of the district court will be affirmed.

[ * Note. — See this case, with an elaborate note on the subject of unconscionable contracts, in 33 Am. Rep., pp. 182-184. — Reporter.]